This is an interlocutory appeal involving controlling questions of law as to which the parties substantially disagree. Those questions are:
1. Are defamatory communications made in the course of, and relevant to, a federal grievance proceeding absolutely
privileged?
2. Is referring to a person as "a known Bigot" actionable?
The trial court, by refusing to grant the defendants' motion to dismiss a libel action, in effect, held that Alabama should recognize only a qualified privilege to communications made in the course of a labor grievance proceeding, and that whether the reference to the plaintiff as "a known Bigot" was libelous, was a question for a jury. We affirm. *Page 884 
The defendants claim that the federal preemption doctrine has special application to grievance proceedings conducted pursuant to collective bargaining contracts governed by federal law, "for those proceedings serve Congress' purpose of promoting industrial peace." Pertinent statements by either party in the presentation or resolution of a grievance, they say, are privileged, and they claim that to subject the parties to the risk of state tort liability for such statements "would cabin their freedom to present their positions with reference to the grievance in a manner they consider most effective."
The libel action arose out of a letter, Appendix A, written in connection with a grievance proceeding. The letter states, among other things, that the Union, after investigation, "finds no justifiable cause" for denial of a step increase to one Kyser. It attributes denial of Kyser's step increase to "Racial Overtones," and asserts:
"He [Kyser] had no trouble until Earl Boyes, a known Bigot, arrived at the Station."
The defendant filed a motion to dismiss, as follows:
 "Defendants move to dismiss the complaint for lack of jurisdiction over the subject matter. The letter referred to in the complaint, which is attached hereto and incorporated herein by reference, was written and delivered as a step in the grievance procedure of the collective bargaining contract between the United States Postal Service and defendant labor organizations cited therein. Said contract, its administration and utterances in the course thereof are governed exclusively by federal labor law, the Postal Reorganization Act, 84 Stat. 733, 39 U.S.C. § 1201, et seq. The Supremacy Clause of Article VI of the Constitution of the United States preempts state court jurisdiction over alleged common law defamation in labor disputes in the United States Postal Service, which is the subject matter of the complaint herein. Letter Carriers v. Austin, 418 U.S. 264 [94 S.Ct. 2770, 41 L.Ed.2d 745] (1974)."
 I
We hold that defamatory communications made in the course of, and relevant to, a federal grievance proceeding are notabsolutely privileged. Therefore, we refuse to follow the rule of absolute privilege suggested in General Motors Corp. v.Mendicki, 367 F.2d 66 (10th Cir. 1966). We follow instead what we consider is a better rule, that of a qualified privilege, as set out in Bird v. Meadow Gold Products, Inc., 60 Misc.2d 212,302 N.Y.S.2d 701 (1969). We believe that the rule we announce follows what the Supreme Court of the United States has established as a general rule — that a party to a labor dispute may recover for defamatory statements made during the course of the dispute if he can establish that the statement was made maliciously, with knowledge that it was false or with reckless disregard for whether it was false or not. Linn v.United Plant Guard Workers of America, 383 U.S. 53,86 S.Ct. 657, 15 L.Ed.2d 582 (1966). There, Mr. Justice Clark, writing for the Court, opined:
 "Finally, it has been argued that permitting state action here would impinge upon national labor policy because the availability of a judicial remedy for malicious libel would cause employers and unions to spurn appropriate administrative sanctions for contemporaneous violations of the Act. We disagree."
* * * * * *
 "* * * As was said in Garrison v. State of Louisiana, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125: `[T]he use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected.' We believe that under the rules laid down here it can be appropriately redressed without curtailment of state libel remedies beyond the actual needs of national labor policy. . . ."
As stated by the Supreme Court in Linn, the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth. *Page 885 
"Malicious libel enjoys no constitutional protection in any context," the Court said in Linn. "After all, the labor movement has grown up and must assume ordinary responsibility," the Court added.
 II
The defendants say that even assuming that the communication is not privileged, it is not actionable, because the defamatory characterization "known Bigot" is not a statement of fact, but a "pejorative opinion: `rhetorical hyperbole,' like calling one's adversary a `scab,' or a `blackmailer,' or a `Fascist,' or `unfair.'" The defendants contend:
 "In Farmer v. Carpenters, Local 25, 45 L.W. 4263, 4267 [430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338] (March 7, 1977), the Supreme Court again explained in the strongest terms why such defamation must be immune to state libel law:
 "`The potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts.'
 To dub one who is believed guilty of racial discrimination a `racial Bigot' is not particularly `robust' language and is certainly not confined to labor circles. Indeed, it is common parlance, typical of media commentators. To entertain this complaint is indeed `intolerable.'"
We disagree with the defendants' argument. Like the Supreme Court of the United States, we are aware that "robust language" is sometimes used in labor disputes, but it is for a jury to say whether there was an abuse of the qualified privilege under all the facts and circumstances of the case. It would be inappropriate to determine this question on a motion to dismiss unless it were shown that the plaintiff could not recover under any set of circumstances, or that no issue of a material fact remained in the case, if the motion to dismiss were treated as a motion for summary judgment. Whether the qualified privilege was abused by the defendants is a jury question.
The plaintiff may be able to prove that the characterization of him was a deliberate or reckless untruth. The jury could infer that the characterization meant that Boyes discriminated against Kyser because of Kyser's race. If the charge were true, it could have meant that Boyes was guilty of violating Federal laws and regulations. See 42 U.S.C. § 2000e-16 (1974), and Postal Service, 39 C.F.R. § 447.25 (1976).
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and BEATTY, JJ., concur.
 APPENDIX A AZALEA CITY BRANCH NUMBER 469 NATIONAL ASSOCIATION OF LETTER CARRIERS (AFFILIATED WITH AFL-CIO) P.O. Box 1692 MOBILE, ALABAMA 36601
May 9, 1976
Certified Mail 803015*
Postmaster 250 St. Joseph St. Mobile, Al 36601
This is an appeal to step 2a of a grievance decision by Assistant Superintendent Cottage Kill Station (204-B) Earl Boyes, on May 7, 1976, concerning Johnnie Kyser, full time regular letter carrier PF1-5 of the Mobile, Al Postal Service. *Page 886 
The time limit for processing at step 1a was extended by Mutual Consent.
Management has violated the National Working Agreement, including but not limited to, Article 3 which incorporates Public Law 91-375, Article 2 and Article 9 Section 5. The grievance was filed timely by Mr. Kyser. Management's responce was "That it was untimely and there had been no official notification."
On April 22, 1976, George Naman, Superintendent Cottage Hill Station, Told Mr. Kyser. "That he had denyed his step increase; due to substandard performance."
The Postal Reorgamozation Act states that "employes will reach maximum pay step for their respective labor grades after not more than 8 years satisfactory service in such grades."
After investigation the Union finds no justifiable cause for denying the step. Mr. Kyser has been at the Post Office for 4 years. There are two counselings and four complaints in his file.
This record does not indicate a serious unsatisfactory service in the performance of his duties. In fact! It displayes a good job. However, it does smack of Racial Overtones. He is the only denyed a step increase in the station. He is also Black. He had no trouble until Earl Boyes, a known Bigot, arrived at the Station.
The Union requests that Mr. Kyser be granted the step increase. The Union also requests that 8% interest be Paid.
/s/ Johnnie Kyser W.D. Dunning Johnnie Kyser Shop Steward Aggrieved NALC
/s/ W.D. Dunning