Essie Mae BROOKS, Plaintiff,

v.

The SOLOMON COMPANY, et al., Defendants.

Civ. A. No. CV81–PT–1367–S.

United States District Court, N. D. Alabama, S. D.

June 29, 1982.

O. William Adams, III, Birmingham, Ala., for plaintiff.

Stanley A. Cash, Huie, Fernambucq & Stewart by Stanley A. Cash, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause is before the court upon plaintiff's Motion to Remand the above entitled action to the Circuit Court of Jefferson County, Alabama, filed May 20, 1982, and upon defendants' Motion for Summary Judgment filed May 4, 1982. This action was originally filed in the Circuit Court of Jefferson County on September 23, 1980, by the plaintiff against her employer, The Solomon Company, and against Allen Solomon, an officer of the defendant company. Plaintiff's complaint claimed damages for "false, wrongful, and malicious statements made by defendant, Allen Solomon." The

statements were alleged to have been made on or about July 23, 1980, while plaintiff was in the employ of the defendant, The Solomon Company. Allen Solomon was alleged to have uttered the slanderous remarks while acting as one of plaintiff's employers, and while acting as agent or servant of the defendant company. Plaintiff claimed that the statements were made in the presence of other employees and were conveyed to other employees by Allen Solomon. On November 10, 1980, the defendants answered plaintiff's complaint by asserting, *inter alia*, the defenses of privilege and qualified privilege. On September 2, 1981, over eleven months after the filing of plaintiff's complaint, the defendants filed a Petition for Removal of this action to the United States District Court asserting as grounds that the plaintiff's allegations concerning false statements allegedly made by defendant were made, if at all, during the course of a grievance committee proceeding involving management and union representatives being conducted pursuant to and in accordance with the National Labor Relations Act. Defendants' petition avers that plaintiff and defendants were participating in a management union grievance process pertaining to plaintiff's work related complaint when the statements were allegedly made by defendant, Allen Solomon. It is the defendants' position that the matters involved in this action are matters over which there is an overriding federal policy pursuant to 29 U.S.C. § 171 et seq., which requires the exclusive application of federal law and further that the statements allegedly made were an integral part of the bargaining process being carried on in an effort to adjust the plaintiff's grievance, thereby giving this court jurisdiction in accordance with the aforementioned statutes and 28 U.S.C. § 1331. Plaintiff's Motion to Remand asserts that both defendants were served on October 23, 1980 and should be denied as untimely under 28 U.S.C. § 1446(b) because the petition was not filed within thirty days of service of the initial pleading. Defendants' response to plaintiff's basis for remand is that

the Petition for Removal is timely pursuant to the second paragraph of 28 U.S.C. § 1446(b). This provision states:

> If the case stated by the initial pleading is not removable, a petition for removal may be filed *within thirty days* after receipt by the defendant through service or otherwise, of a copy of an amended pleading, motion order or *other paper* from which it may first be ascertained that the case is one which is or has become removable. (emphasis added)

Defendants argue that it was not until plaintiff's deposition was taken on August 7, 1981 that the defendants learned that the alleged statements for which plaintiff is seeking damages were uttered during a grievance proceeding conducted pursuant to a collective bargaining agreement. Thus, defendants aver that the petition to remove was timely filed as it was filed within thirty days from an "other paper;" the "other paper" being plaintiff's August 7 deposition. The court has required an affidavit from defendants which has satisfied the court that defendants' original assertion of privilege was not based on the type privilege now asserted.

The court has determined that the Petition for Removal was timely filed. On its face, the initial pleading filed in this action does not appear to be removable. It merely alleges a cause of action based upon common law libel. A fair reading of the complaint would not adequately place the defendants on notice that a potential federal question or labor issue was involved. Several courts have held that discovery depositions taken under state law constitute an "other paper" within the meaning of that term as it is used in 28 U.S.C. § 1446(b). *See Fuqua v. Gulf, Colorado and Sante Fe Railway Company*, 206 F.Supp. 814 (E.D. Okl.1962); *Gilardi v. Atchison, Topeka and Sante Fe Railway Company*, 189 F.Supp. 82 (N.D.Ill,1960). Moreover, this court has concluded that the matter in question is one over which there is an overriding federal policy which requires the application of fed-

eral law to the issues presented.[1] *See Honaker v. Fla. Power & Light Co.*, 95 LRRM 3268 (M.D.Fla.1977). It is an established principle that where the nature of the claim asserted in the complaint is federal, the suit may be removed, irrespective of whether it is so characterized by the plaintiff in his complaint. See 1A *Moore's Federal Practice* ¶ 0.160, pp. 185–86 (2nd ed. 1982). Here, although the complaint on its face pleads no cause of action under federal law, plaintiff's deposition clearly elucidates that the complained of statements took place during the course of a management-union grievance proceeding. Where a question of federal status may be involved, a federal court may look beyond the complaint to the background of the plaintiff's claim to determine whether federal question jurisdiction exists. *See* 1A *Moore's Federal Practice* ¶ 0.160, p. 186 (2nd ed. 1974), and *La Chemise Lacoste v. Alligator Company*, 313 F.Supp. 915 (D.Del.1970). Plaintiff's Motion to Remand is due to be denied.

Turning to defendants' Motion for Summary Judgment, the court notes that defendants' primary ground for summary judgment is the defense of absolute privilege as that defense was applied by the United States Court of Appeals, Tenth Circuit, in *General Motors Corp. v. Mendicki*, 367 F.2d 66 (10th Cir. 1966). In that case the court emphatically stated:

> It is our conclusion that statements made either by representatives of management or by representatives of an employee *at a conference and bargaining session having for its purpose the adjustment of a grievance of the employee or other disposition of such grievance are unqualifiedly privileged.*

367 F.2d 66, at 70 (emphasis added).

The *Mendicki* employment of absolute privilege has been applied by federal courts in other more recent cases to statements made in grievance proceedings. In the case of *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274, at 279 (10th Cir. 1981), the court explained:

We remain convinced that the reasoning in *Mendicki* is sound, namely that damage suits predicated on statements made in the grievance procedures would tend to interfere with frank and strong statements of positions in such proceedings. *See also, Breest v. Perrin*, 495 F.Supp. 287 (D.N.H.1980), *aff'd*, 655 F.2d 1 (1st Cir. 1981), *cert. denied*, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 597 (1981); and *Honaker v. Fla. Power & Light Co., supra.* Although *Mendicki* does not specifically discuss the question of federal question or jurisdiction, the court does say:

> The declared policy of the national legislation on labor relations is to encourage, facilitate and effectuate the settlement of issues between employers and employees through the "processes of conference and collective bargaining between employers and representatives of their employees," in order to promote and preserve industrial peace. (61 Stat. 152, 29 U.S.C.A. § 171.)

> In *Local 174 Teamsters, Chauffeurs, Warehousemen, etc. v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, the court pointed *out the importance of a single body of substantive law in the* area embracing the adjustment of issues between employers and their employees by the peaceful process of conference and collective bargaining, and further said:

> "* * * The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. *State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy.*"

> If the representatives of either employer or employee were subject to an action for damages because of statements made of what they claimed to be the pertinent

---

1. The basis and reasons for such a federal policy are further discussed hereinafter with reference to the question of absolute privilege.

facts respecting a controversy under consideration and of their position respecting such matter and the reasons therefor, at a conference or collective bargaining session being held to adjust such controversy, the likelihood of the attainment of peaceful adjustments or dispositions of the issues involved between them through the conference or bargaining processes would be greatly decreased.

The court, in *Linn v. United Plant Guard Workers of America*, 383 U.S. 53, 62, 86 S.Ct. 657 [662], 15 L.Ed.2d 582 recognized it was the Congressional intent that full, frank, uninhibited, robust, and wide-open debate between the representatives of the employer and employee in such conferences and bargaining sessions should be encouraged.

367 F.2d at 70–71 (emphasis added).

Applying the *Mendicki* and *Hasten* cases to the suit at bar, the first question to be considered must be: were the alleged slanderous statements made during a conference or session having for its purpose the adjustment of a grievance or other peaceful disposition of such grievance? For its answer, the court must initially look to the collective bargaining agreement.[2]

The agreement pertinent to the case at bar is the collective bargaining agreement between The Solomon Company and the Amalgamated Clothing and Textile Workers Union which became effective on August 25, 1979. That agreement, at Article XVIII, styled Union-Management Meeting, provides:

### ARTICLE XVIII—UNION–MANAGEMENT MEETING

In order to promote a more efficient and economical operation of the Employer's plant and harmonious Employer-employee relationships within the plant, there will be a regular meeting each week between a Union shop committee and representatives designated by the Employer. Any and all matters pertaining to the operation of the plant and to this Agreement may be submitted at such meeting by either the Union or the Employer. Matters not satisfactorily adjusted at such meetings by agreement may be submitted to the regular grievance and arbitration procedure provided in Article XVII of this Agreement.

Article XVII of the Agreement, which is styled as "Grievance Procedure and Arbitration," states:

### ARTICLE XVII—GRIEVANCE PROCEDURE AND ARBITRATION

Any complaint, grievance or dispute arising under, out of or in connection with this Agreement or the interpretation or performance thereof shall be submitted in the following manner:

*Step One* : A. Between the aggrieved employees and the appropriate Union representative on the one hand, and the Plant Superintendent on the other hand. This step must take place within one week of the occurrence of the complaint, grievance or dispute. An aggrieved person's physical presence shall not preclude that individual from processing a complaint under the grievance procedure.

B. If the aggrieved individual is unable to attend the meeting referred to in Step 1–A for good and sufficient causes during the second week after the grievance arises, the Union Representative shall present a statement of the grievance to the Company.

By plaintiff's deposition, it is evident that the meeting at which the alleged slanderous statements were made was a meeting between management and union officials having as its purpose the adjustment of employee disputes or grievances. According to statements made by the plaintiff, she had

---

**2.** Several state courts have deemed the provisions of the collective bargaining agreement itself to give rise to a privilege as to communications made pursuant to such provisions. *See, Polk v. Missouri P. R. Co.*, 156 Ark. 84, 245 S.W. 186 (1922); *Henthorn v. Western M. R. Co.*, 226 Md. 499, 174 A.2d 175 (1961); *True v. Southern R. Co.*, 159 S.C. 454, 157 S.E. 618 (1931); *Anderson v. Southern R. Co.*, 224 S.C. 65, 77 S.E.2d 350 (1953).

engaged in an altercation of sorts with a soft drink salesman regarding the return of money which she had allegedly lost in a drink machine on The Solomon Company premises. Subsequent to this altercation the matter was called to her attention by the plant superintendent in the presence of plaintiff's shop steward. The *shop steward* then *advised* plaintiff to take up the matter at the *weekly union-management meeting* which was called the "rail." The "rail" was described by plaintiff as: "... they call it the rail when all the union officials and Mr. Solomon get together and try to work out the complaint that you have."[3] Under more specific questioning concerning the alleged statement made by Solomon, the plaintiff acknowledged that the remark was made during the course of a meeting *called for the purpose of adjusting employee grievances.*[4]

Considering the plain language of the collective bargaining agreement in conjunction with the plaintiff's acknowledged definition of the meeting and its purpose, the court finds that the meeting forming the basis of this action was in fact a meeting called for the purpose of informally disposing of grievances and was conducted as an attempt to adjust employee disputes in accordance with a collectively bargained for agreement.

The second issue to address is: should the defense of absolute privilege be applied to statements made at such a proceeding?

Federal labor policy favors the peaceable resolution of labor grievances through conferences and bargaining processes. *See Mendicki, supra,* and *Honaker, supra.*[5] Courts have clearly held that in light of this overriding policy to "encourage, facilitate and effectuate the settlement of issues between employers and employees" an unqualified and absolute privilege should be applied to alleged defamatory remarks made in the context of such a meeting.[6] The plaintiff has urged the application of

*Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), to the circumstances at hand in an attempt to convince the court to apply the Alabama common law of conditional privilege as set out in *Dunning v. Boyes,* 351 So.2d 883 (Ala.1977), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978). The *Linn* decision apparently opened the way for application of state law to certain defamatory conduct occurring in the context of labor relations. However, *Linn's* facts are distinguishable from the facts here. *Linn* dealt with a libel action for statements published during a union *organizing campaign.* In the instant action we have a libel action for statements made at a management-union grievance adjustment proceeding conducted pursuant to a collective bargaining agreement. As recognized in *Mendicki,* the question under circumstances such as those in this action is whether an action for damages on account of the statement of Allen Solomon made in a conference contemplated by the collective bargaining agreement for the adjustment of an employee's grievance would interfere with the national labor policy, and whether it is necessary to hold such statements unqualifiedly privileged to prevent impairment of that policy. In *Linn* the question was whether a libel action in the circumstances of that case "might interfere with the national labor policy." The *Linn* decision involved written statements published in a union organizing campaign. In *Linn* exclusive jurisdiction was unsuccessfully sought on the basis of statements arguably made during the course of what the law forbids or discourages; an unfair labor practice. While the NLRB has jurisdiction over claims of unfair labor practice, there is no federal policy reason to shield the alleged libeler from a libel made during the course of an unfair labor practice. Here the statements were made during a proceeding which, rather than being discouraged by federal law, is encouraged by fed-

---

3. See plaintiff's deposition at p. 21.

4. See plaintiff's deposition at pp. 29–32.

5. See also, *Joftes v. Kaufman,* 324 F.Supp. 660 (D.D.C.1971).

6. For a state case following the *Mendicki* rule see *Rougeau v. Firestone Tire & Rubber Co.,* 274 So.2d 454 (La.App.1973).

**1234**

eral law; federal policy being to encourage the peaceful disposition of grievance issues.[7] While the libelous statements considered in *Linn*, and the context in which they were uttered, constituted conduct which was merely a "peripheral concern" of the NLRB, the circumstances giving rise to the action at bar involve interests which necessarily require the uniform employment of federal law in order to prevent the impairment of national labor policy.

■ Plaintiff has failed to show sufficient grounds, factual or otherwise, in support of his contention that the absolute defense of unqualified privilege should not be adopted and applied by this court. Plaintiff has offered, by affidavit, proof that defendants may have had a reason to be hostile to her as a result of a prior suit resulting from an automobile accident. This would have a bearing on a question of malice if there were a qualified privilege. It has no bearing on a claim of absolute privilege. As no genuine issues of material fact have been raised, the court is of the opinion that summary judgment is due to be granted in favor of defendants and against the plaintiff. An order in accordance with this memorandum opinion will be entered contemporaneously herewith.