Anthony W. **KARAMBELAS,**
Plaintiff–Appellant,

v.

**HUGHES AIRCRAFT COMPANY,**
Defendant–Appellee.

No. 91–56523.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1993.

Decided May 7, 1993.

Gary D. Stabile, Mullen & Stabile, Manhattan Beach, CA, for plaintiff-appellant.

Paul Grossman and J. Al Latham, Jr., Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for defendant-appellee.

Before: WALLACE, Chief Judge, and O'SCANNLAIN and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Anthony W. Karambelas appeals from the district court's order which dismissed his complaint for wrongful termination against Hughes Aircraft Company (Hughes) with prejudice. Karambelas had filed his complaint in the California Superior Court, but Hughes removed it to the district court. Karambelas claims, among other things, that the district court did not have removal jurisdiction. We agree, reverse the district court's decision, and remand to that court with instructions to remand the case to the California Superior Court.

## BACKGROUND

Karambelas is an attorney and was in-house Assistant General Counsel for Hughes. He was in charge of overseeing patent litigation in which the company was represented by outside counsel. During his watch, a settlement was reached in certain patent litigation, and Hughes gave a general release to Ford Aerospace & Communications Corp. (Ford). That release not only covered Ford, but also covered Ford's customers. The result of the extended coverage was that certain claims against the United States were dismissed. That potentially cost Hughes millions of dollars. Hughes believed that the breadth of the release was a legal error that never should have occurred.

The ultimate result was that Karambelas was blamed and was given an opportunity to resign or be demoted. When he grabbed neither horn of that dilemma, he was fired. He then commenced this action in which he claimed that he had an employment contract with Hughes which provided that he could only be terminated for good cause. He alleged that the claimed legal error was not his, but Hughes wanted a scapegoat. Thus, despite the fact that his work was superior, he was terminated. That, he claimed, was a violation of his contract and of the covenant of good faith and fair dealing that is a part of every contract made in California. He further alleged that he was defamed and that Hughes violated California Labor Code Section 1050 by making misrepresentations in an attempt to prevent his future employment elsewhere. Notably absent was any claim for relief under any federal law.

However, at Karambelas's later deposition in the state proceedings the following exchange took place under questioning by Hughes' counsel:

Q: Do you contend in this litigation, Mr. Karambelas, that Hughes terminated you for the purpose of avoiding the vesting of your pension rights?

   *    *    *    *    *    *

A: Among other reasons, probably.

Q: ... Do you have any facts to support your belief that one of the reasons that Hughes terminated you was to save the money that they would otherwise have to pay you in retirement benefits?

A: Well, I remember Westerman making a big issue out of this and telling me that I had no concern, that I would get it, and that's not what happened by the way I was—by what happened later on. I was told I wasn't going to get it.

Q: The conclusion that you draw from that fact is that one motivation of Hughes in terminating you was to deny you your retirement benefits?

A: That's what happened.

Q: And that is your understanding?

A: Yes.

Hughes immediately pounced upon those comments and removed the case to the district court. 28 U.S.C. §§ 1441, 1446. It asserted that the wrongful termination action was preempted by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (ERISA). In particular, Hughes asserted that terminating a person to interfere with that person's pension rights would violate ERISA and there is, therefore, preemption of that claim. *See* 29 U.S.C. § 1140.

When the case reached the district court, it was assigned to Judge Marshall. She was dubious about jurisdiction, so she issued an order to show cause (OSC) why the case should not be remanded for lack of jurisdiction. The parties responded to that OSC. Hughes also moved to dismiss the case for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). Before Judge Marshall could rule on the OSC or the motion to dismiss, the case was transferred to Judge Real. He, ultimately, granted the Rule 12(b)(6) motion; he did not rule on the OSC. This appeal followed.

## DISCUSSION; JURISDICTION

This court has jurisdiction of this appeal. *See* 28 U.S.C. § 1291.

The more serious question is whether the district court had jurisdiction over the case. That is an issue which we review de novo. *Felton v. Unisource Corp.*, 940 F.2d 503, 506 (9th Cir.1991). Simply stated, the issue here is whether the case was improperly removed.

### A. *Waiver of Objections.*

■ At the outset, Hughes insists that, because Karambelas made no motion to remand, we should not ask whether removal was proper but should ask instead "whether the federal district court would have had original jurisdiction of the case had it been filed in that court." *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). However, in this area of asserted complete preemption the question we must answer in any event is whether the complaint stated a federal cause of action. *See Harper v. San Diego Transit Corp.*, 764 F.2d 663, 666 n. 1 (9th Cir.1985).

At any rate, Hughes' reliance on the *Grubbs* rule is not well taken. This is a case where the remand issue was put squarely before the district court. We have held that raising the issue in opposition to a motion to dismiss will suffice. *See Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 n. 2 (9th Cir.1989); *Harper*, 764 F.2d at 666. That occurred here. Karambelas did, indeed, argue for remand in his opposition to the motion to dismiss.

This case also presents an even more compelling reason to find that there was no waiver. Here the district court itself had raised the question when it issued the OSC. The parties responded to that OSC. There was no reason for a separate motion by Karambelas. Of course, the district court never did rule on the OSC and never directly ruled on Karambelas' argument that the case should be remanded. It simply dismissed his complaint with prejudice. Thus, Karambelas was not required to bring an interlocutory appeal in order to avoid waiver. *Cf. Sorosky v. Burroughs Corp.*, 826 F.2d 794, 798–99 (9th Cir.1987) (failure to seek interlocutory appeal waived objection to removal).

In short, Karambelas has not waived his right to object to the removal.

### B. *Propriety of Removal.*

■ Karambelas' complaint for wrongful termination did not plead a federal cause of action. Normally that would be the end of our inquiry because the plaintiff is "the master of the claim" and is not required to assert federal claims, even if they exist. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Of course, in the area of complete preemption if the true gravamen of the action is a federal claim—such as deprivation of pension plan benefits—the plaintiff cannot avoid preemption by pleading a purported state claim. *See Sorosky*, 826 F.2d at 799–800. ERISA is one of those areas. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–67, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987).

Nevertheless, even where there is complete preemption, removal must be approached with great care. The Supreme Court explored that in *Caterpillar*. There

the plaintiffs pled a state action for breach of contract and did *not* refer in any way to a collective bargaining agreement (CBA). Defendant claimed there was a CBA and that the plaintiffs could not, as a matter of law, have a separate employment contract. 482 U.S. at 390, 107 S.Ct. at 2428. Thus, defendant said, there must be complete preemption, so removal was proper. The Supreme Court disagreed. It first pointed out that plaintiff was "the master of the claim...." *Id.* at 392, 107 S.Ct. at 2429. It then acknowledged the complete preemption doctrine which *could* convert an action into a federal action despite the nature of the plaintiff's pleading. *Id.* at 393, 107 S.Ct. at 2430. The Court concluded: "[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* at 399, 107 S.Ct. at 2433 (emphasis in original).

This case is much like *Caterpillar.* Here, too, it might be that Karambelas could claim that his ERISA rights were violated. He has not done so to date. In fact, he informed the district court that he cannot do so. As he put it, "Karambelas has no factual basis for asserting an ERISA claim and one cannot be alleged consistently with Rule 11 of the Federal Rules of Civil Procedure." This, of course, distinguishes Karambelas' claim from *Sorosky* where the plaintiff pled that the employer sought to prevent him from obtaining benefits. 826 F.2d at 800. This case also differs from *Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124 (9th Cir.1992). There the plaintiff pled that the very purpose of the employer's actions was to deprive the family of medical benefits. *Id.* at 1128–30. For the same essential reason, this case differs from *Nishimoto v. Federman–Bachrach & Assoc.,* 903 F.2d 709, 712–13 (9th Cir.1990). This case is more like *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1404–05 (9th Cir. 1988) where we held that if the loss of ERISA benefits was a result of rather than a motivation for a wrongful discharge, there was no cause of action under ERISA.

Here the heart and soul of the complaint is Karambelas' outrage at the fact that he was made a scapegoat for an alleged serious legal error committed by outside counsel and by his own boss. His complaint does mention that he was terminated just before his retirement benefits vested, but that was clearly in the nature of a jeremiad or, at most, a consequence of the scapegoating wrong that was perpetrated upon him. *See id.*

Ah, says Hughes, but one cannot forget the deposition testimony. We have not forgotten it. We are also aware of the authorities which permit removal based upon facts developed at a deposition. *See, e.g., Felton,* 940 F.2d at 507; *Zawacki v. Penpac, Inc.,* 745 F.Supp. 1044, 1047 (M.D.Pa.1990); *Riggs v. Continental Baking Co.,* 678 F.Supp. 236, 238 (N.D.Cal.1988); *Brooks v. Solomon Co.,* 542 F.Supp. 1229, 1230–31 (N.D.Ala.1982). They do not militate for a finding of jurisdiction in this case.

*Felton* is illustrative. It was decided on summary judgment, and by that time it was clear that the *only* basis for the plaintiff's claim was an ERISA violation. 940 F.2d at 507. The complaint itself gave no hint of a ground for asserting that plaintiff's discharge had been wrongful, but by the time Felton faced summary judgment he had asserted nothing other than a violation of public policy in the form of depriving him of medical benefits. *Id.* That is far from the case at hand. Here Karambelas does assert a completely independent reason for his termination—the scapegoating theory. He also points out that he has no facts whatever to support an ERISA claim.

The testimony upon which Hughes pitches its whole case for removal makes the absence of facts rather clear. That testimony shows itself to be nothing but the speculation of a person who feels himself wronged. Karambelas states that because he was told his retirement would not be affected, but it was, the deprivation of benefits was "probably" one reason for his termination. Based upon no more than that, he was wise not to plead an ERISA claim. As he told the district court, he could hardly do so without risking sanctions.

The other cases relied upon by Hughes are no more helpful to its cause. In *Zawacki,*

the testimony showed, beyond peradventure, that the amount sought placed the case within the district court's diversity jurisdiction. 745 F.Supp. at 1045–47. In *Riggs*, the testimony showed that the plaintiff *was* suing on a claim covered by a collective bargaining agreement. 678 F.Supp. at 238. Finally, in *Brooks*, the testimony showed that a defamation claim of necessity arose in an arbitration hearing under the NLRA. 542 F.Supp. at 1230. Again, in none of these was the plaintiff's whole case truly based on claims that were not preempted.

In sum, Karambelas never pled and never sought recovery for a claimed violation of his ERISA pension rights. He asserts that he could not honestly do so. To find federal jurisdiction in this case we would have to insist that it can be based upon nothing more than some speculative answers to clever questioning during the heat of a deposition. There is no reason for us to so insist. In fact, a finding of jurisdiction would require us to have a rather pertinacious desire to increase the jurisdictional reach of the federal courts. We have no such desire. Certainly nothing in the policy which drives ERISA calls for an exercise of jurisdiction in this case.

## CONCLUSION

Karambelas was fired from his position as Assistant General Counsel at Hughes. He then filed a well-pleaded complaint for wrongful discharge based upon the independent state ground that he was being made a scapegoat for the activities of people whom he did not control. When, at a deposition, he speculated that another possible reason for his discharge might have been to deprive him of ERISA rights, Hughes removed the case to federal court. That mere simulacrum of a possible unasserted ERISA claim was insufficient to form a basis for federal jurisdiction. Therefore, the case should have been remanded to the state court.

REVERSED and REMANDED with instructions to REMAND to the California Superior Court.