**Fred D. CAMPBELL, Plaintiff–Appellant,**

v.

**The AEROSPACE CORPORATION; Arthur J. Schiewe, Defendants– Appellees.**

**No. 95–56007.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1996.

Decided Sept. 3, 1997.

**1310**

Allan F. Grossman, Encino, CA, for plaintiff-appellant.

Linda M. Lawson, Patricia A. Ellis, Meserve, Mumper & Hughes, Los Angeles, CA, for defendants-appellees.

Before: BRUNETTI, TROTT, and THOMAS, Circuit Judges.

PER CURIAM:

## OVERVIEW

Fred D. Campbell sued his employer, The Aerospace Corporation ("Aerospace"), in state court for wrongful and tortious discharge. The case was removed to federal court on an ERISA preemption theory because his complaint referred in a prayer for punitive damages to a negative impact on his retirement benefits. Campbell did not prevail on any of his causes of action. He appeals, claiming that the district court had no subject matter jurisdiction to hear his case.

To decide Campbell's claim, we must answer two questions. First, does ERISA necessarily preempt a state cause of action involving wrongful discharge where the loss of employee retirement benefits is relied on in a prayer for punitive damages? And second, does Campbell's invocation of federal law as the source of the public policy tortiously violated by his discharge supply federal question jurisdiction? We hold that ERISA did not preempt his causes of action and that the incorporation of the federal False Claims Act into the state-law claims did not confer subject matter jurisdiction. We therefore reverse and remand with instructions to the district court to remand this action to state court.

## BACKGROUND

In response to his termination from Aerospace, Campbell brought suit in California state court, alleging six causes of action, including tortious discharge in violation of public policy. Campbell alleged he "was terminated for 'blowing the whistle' on illegal activity of defendant Aerospace, to wit, illegally billing the U.S. Air Force." The critical allegation at issue here is contained in paragraph 10:

> In doing the acts set forth above, defendants knew that terminating plaintiff after long years of service would minimize plaintiff's right to recover and to build adequate retirement benefits, would require plaintiff to be without certain benefits and would make it extremely difficult for plaintiff to obtain employment because of his high salary, advancing age and the stigma of termination for cause.... Defendants conduct warrants the assessment of punitive damages.

Aerospace contends that because Campbell charges that Aerospace intended to deprive him of benefits by terminating him, his claim "relates to" an employee benefit plan and is therefore preempted by ERISA. Campbell, on the other hand, maintains that this allegation was made only to justify punitive damages, which he sought in order to punish Aerospace for its egregious conduct in terminating him for engaging in protected whistle-blowing activities.

Based on the paragraph 10 allegation, Aerospace removed the case to federal court. Campbell did not challenge removal at that time. The parties stipulated to dismissal of two claims of age discrimination, and Aerospace moved for summary judgment on the remaining claims. In its motion for sum-

mary judgment, Aerospace claimed that Campbell failed to specify the source of public policy violated by his termination, an element of his tortious discharge claim. In response, Campbell invoked only the federal False Claims Act, 31 U.S.C. §§ 3729–3731. The court granted partial summary judgment on Campbell's claims of tortious discharge in violation of public policy and of defamation, leaving the rest for trial.

Campbell then unsuccessfully moved to remand the case to state court. The district court concluded that ERISA required the matter to remain in federal court. The parties tried remaining two claims-breach of implied contract and breach of the implied covenant of good faith and fair dealing-to a jury, which found Aerospace not liable.

Campbell brought this appeal, challenging the district court's subject matter jurisdiction.

## STANDARD OF REVIEW

Because Campbell failed to oppose and preserve an objection to removal, we consider on appeal "not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). We review de novo the existence of federal subject matter jurisdiction. *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir.1995). Whether ERISA preempts state law is a question of law, which we review de novo. *Inland Empire Chapter of Assoc. Gen. Contractors v. Dear*, 77 F.3d 296, 299 (9th Cir.1996).

## DISCUSSION

### I. ERISA Preemption

The Employee Retirement Income Security Act of 1974 (ERISA), codified at 29 U.S.C. § 1001 et seq., is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Section 514(a) of ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (emphasis added). The parties do not dispute that Aerospace's plan is an ERISA-covered plan. Thus, we must determine whether the state law relied upon in Campbell's complaint "relates to" an employee benefit plan.

The Supreme Court has determined that Congress used the words "relate to" in a broad sense: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with or reference to* such a plan." *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2899 (emphasis added). Furthermore, a claim alleging termination "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan," 29 U.S.C. § 1140, relates to ERISA. A state law may relate to a plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990).

However, the preemptive power of ERISA is not without limit. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Recently, the Court has acknowledged that the terms "relate to" and "connection with" are not sufficiently helpful in determining the limits of ERISA's preemptive powers. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere.'" *Id.* (alterations and citations omitted); *see also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, ― U.S. ―, ―, 117 S.Ct. 832, 842, 136 L.Ed.2d 791(1997) (Scalia, J., concurring) ("The statutory text provides an illusory test, unless the Court is willing to decree a degree of pre-emption that no sensible person could have intended-which it is not."). Thus, the Court concluded that "[w]e

simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* The Court has recognized that Congress's intent in passing section 514(a) was:

> "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government, and to prevent the potential for conflict in substantive law requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

*Id.* (quoting *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. at 484) (alterations omitted). With this understanding of the broad but not limitless scope of ERISA preemption and the Court's guidance in directing us to consider the purposes of ERISA, we turn to the application of ERISA preemption to state wrongful termination law.

In determining whether ERISA preempts state common law causes of action for wrongful discharge, both the Supreme Court and the Ninth Circuit have focused on the employer's alleged motivation in terminating the employee, concluding that a claim is preempted when the complaint alleges that "the employer had a pension-defeating motive in terminating the employment." *Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483; *see Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1405 (9th Cir.1988) (no preemption when loss of benefits is not "a motivating factor" behind termination).

In *Ingersoll–Rand*, 498 U.S. at 135–36, 111 S.Ct. at 480–81 the Court confronted whether ERISA preempted a state common law tortious interference in violation of public policy claim where an employee alleged that his employer unlawfully discharged him, four months prior to the vesting of his pension rights, to avoid making contributions to his pension fund. Under the applicable state law, an employee could recover when the principal reason for termination was the employer's desire to avoid contributing to or paying benefits under the pension fund. *Id.*

at 140, 111 S.Ct. at 483. Thus, the Court recognized that "the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension plan itself." *Id.* at 139–40, 111 S.Ct. at 482–83. The Court concluded that "in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment." *Id.* at 140, 111 S.Ct. at 483.

The Ninth Circuit has similarly held that the employer's alleged motive in terminating the employee is critical. A claim does not relate to ERISA "when the loss of pension benefits was a *mere consequence of, but not a motivating factor behind,* the termination of benefits." *Ethridge*, 861 F.2d at 1405 (quotation omitted) (emphasis added). In *Ethridge*, the plaintiff brought a claim for tortious discharge in state court, alleging that he was terminated from his employment in retaliation for his union activities. In his complaint, Ethridge asserted that "the above said wrongful acts of Defendants, w[ere] a substantial factor in causing damage and injury to Plaintiff, including loss of employment and benefits." *Id.* at 1404 (alterations omitted). Relying on the plaintiff's use of the word "benefits," the defendants attempted to remove the case to federal court on the ground of ERISA preemption. We rejected their argument. Ethridge did not claim that his employer's true motivation for discharge was to deprive him of pension rights, but merely alleged that the loss of benefits was a consequence of the tortious discharge. *Id.* at 1405. Therefore, Ethridge's claim for tortious discharge was not preempted simply because he sought to recover lost salary and benefits.

Similarly, in *Karambelas v. Hughes Aircraft Co.*, 992 F.2d 971, 974 (9th Cir.1993), the plaintiff, former in-house counsel for the defendant, brought a breach of employment contract claim, alleging that his employer terminated him because it needed a scapegoat after a costly legal error. Defendants sought to justify removal by pointing to plaintiff's acknowledgment, in his deposition,

that one reason for his termination was probably to avoid the vesting of his pension rights. We rejected this contention, reasoning:

> Here the heart and soul of the complaint is Karambelas' outrage at the fact that he was made a scapegoat.... His complaint does mention that he was terminated just before his retirement benefits vested, but that was clearly in the nature of a jeremiad or, at most, a consequence of the scapegoating wrong that was perpetrated upon him.

*Id.* Again, mention of the loss of benefits as a consequence of termination did not give rise to ERISA preemption where the employer was motivated by other concerns.

On the other hand, and in contrast to *Ethridge* and *Karambelas,* we have held that where the plaintiff's claim or theory alleged that the employer terminated the employee to avoid paying benefits or sought to prevent the discharged employee from obtaining benefits, ERISA preempted the claim. *See, e.g., Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124, 1131 (9th Cir.1992) (wrongful termination claim preempted because plaintiff's sole theory was that his employer terminated him to deny him medical insurance benefits after his son was born with spina bifida); *Felton v. Unisource Corp.,* 940 F.2d 503, 507 (9th Cir.1991) (claim brought under state wrongful termination and state disability discrimination law was preempted because plaintiff alleged that employer fired him to avoid paying his medical insurance benefits after he contracted lung cancer); *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 800 (9th Cir. 1987) (breach of contract/wrongful discharge claim based on theory that employer agreed to provide retirement benefits then sought to prevent acquisition of those benefits was preempted to the extent that it referred to the employee benefit plan).

██ We recognize that, unlike *Ethridge,* Campbell complained not only that he lost benefits as a consequence of his termination, but that Aerospace knew of this result. We nonetheless conclude that *Ethridge's* holding that a claim does not relate to ERISA when the loss of benefits is a "mere consequence of, but not a motivating factor behind" the termination controls this case. Thus, we focus on Aerospace's alleged motivations in terminating Campbell.

Like Ethridge, Campbell did not claim that his employer's motive in terminating him was the destruction of his retirement benefits, but rather he alleged that the loss of benefits was a consequence of his wrongful termination. The allegation of Aerospace's knowledge does not change the fact that the deprivation of benefits was not Aerospace's motive, but merely a proximate result of the termination. There is a discernible and critical difference between an employer who "knows" that the obvious consequences of terminating an employee for whatever cause include the loss of benefits and one who is "motivated" to terminate an employee for purposes of saving money or destroying the employee's benefits. Thus, Campbell's allegation that Aerospace knew he would lose his benefits as a consequence of his termination, made in his claim for punitive damages, does not state a cause of action that "relates to" an employee benefit plan. The substance of his tortious discharge claim was that Aerospace was motivated by a desire to retaliate for his whistle-blowing. To hold otherwise would be to revive the problem *New York State Conference* tried to eliminate, i.e., a definition so broad that nothing escapes its reach.

We find support for our conclusion in the Fifth Circuit's opinion in *Rozzell v. Security Services, Inc.,* 38 F.3d 819, 822 (5th Cir. 1994). In *Rozzell,* the Fifth Circuit encountered facts similar to those before us and, in a well-reasoned opinion, held that ERISA did not preempt a cause of action alleging willful deprivation of benefits as part of its punitive damages claim because the substance of the claim was limited to state law retaliatory discharge. Rozzell alleged that his employer had wrongfully terminated him in retaliation for pursuing statutory rights guaranteed under the Texas Workers' Compensation Act. Although Rozzell's complaint contained only one state statutory cause of action, the defendants seized upon an allegation, made in conjunction with a prayer for punitive damages, that the plaintiff was wrongfully terminated " 'to willfully deprive plaintiff of the compensation and benefits of [his] job' " and removed the suit as preempted by ERISA.

*Id.* at 821. Invoking the well-pleaded complaint rule and looking past the words contained in the complaint to the substance of the claim alleged, the Fifth Circuit concluded:

> [I]t remains patently clear that the substance of his claim is limited to the state law retaliatory discharge cause of action. He included the word "benefits" in his accusation of the requisite malice for punitive damages, not as a separate claim for relief. Rather, the allegation of lost "benefits" related back to the retaliatory discharge in order to punctuate that wrongful conduct. Therefore, the substance of Rozzell's complaint alleges only one cause of action that is governed exclusively by state law.

*Id.* at 822. Just as the substance of Rozzell's claim was wrongful termination in retaliation for filing a workers' compensation claim, the substance of Campbell's claim was wrongful termination in retaliation for his whistle-blowing activities. Campbell did not allege that the deprivation of his benefits was in and of itself wrongful or illegal. Like Rozzell, he pointed to Aerospace's knowledge of these consequences "to punctuate that wrongful conduct."

Our conclusion that ERISA does not preempt this claim is consistent with Congress's intent in enacting ERISA. Unlike *Ingersoll–Rand*, in which the state law precluding termination to avoid paying benefits risked subjecting employers to inconsistent substantive standards concerning benefits plans, the existence of an ERISA plan is irrelevant to the employer's action in the case before us. There is no risk of different state standards governing the same benefits-related conduct, because the conduct at issue here-the employer's employment decisions-is motivated by independent considerations. Thus, federal preemption of causes of action involving state wrongful termination law, where the employer's decisions are motivated by non-ERISA-related interests, would not serve "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw,* 463 U.S. at 90, 103 S.Ct. at 2896.

ERISA therefore does not preempt Campbell's claims and thereby confer subject matter jurisdiction.

## II. The False Claims Act

■ Aerospace argues that there is an alternative source of federal question jurisdiction: the False Claims Act ("FCA"). In order for a federal district court to assert federal question jurisdiction pursuant to 28 U.S.C. § 1331, the plaintiff's claim must "arise under" federal law. Where state law creates the cause of action, federal jurisdiction may nonetheless be available if "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); *see Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808–12, 106 S.Ct. 3229, 3231–33, 92 L.Ed.2d 650 (1986); *see also Rains v. Criterion Systems, Inc.,* 80 F.3d 339, 347 n. 10 (9th Cir.1996) (*"Merrell Dow* suggests that even if the federal law incorporated into a state law claim creates a private right of action, the federal interest may still prove insufficiently substantial to confer federal-question jurisdiction.").

■ To establish a tortious discharge cause of action, a plaintiff must prove as one element that a fundamental public policy exists that is delineated in constitutional or statutory provisions. *Gantt v. Sentry Ins.,* 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 881–82, 824 P.2d 680 (1992). In his complaint, filed in state court, Campbell alleged that Aerospace's actions violated the public policy of California:

> The actions of defendants and each of them violated the public policy of the State of California, to wit, employers must provide employees due process and must follow their own written policies and procedures regarding termination. Furthermore, plaintiff was terminated for "blowing the whistle" on illegal activity of defendant Aerospace, to wit, illegally billing the U.S. Air Force which is funded with taxpayers' money.

Complaint, ¶ 7. Notably, Campbell did not refer either to a specific state statute or to the FCA in his complaint. However, in its Motion for Summary Judgment in the dis-

trict court, Aerospace asserted that Campbell had failed to identify the constitutional or statutory provision which established the public policy allegedly violated. In response, Campbell cited an Aerospace Policy and Practice Memorandum which warned employees to comply with the FCA and quoted relevant provisions of the FCA. On appeal, Campbell presents a state-law theory, contending that California Labor Code section 1102.5(b) also establishes the public policy element.

 We begin our analysis by again noting that the question before the court is not whether removal was proper,[1] but whether the district court would have had jurisdiction had the case been filed in federal court "in the posture it had at the time of entry of federal judgment." *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 932 (9th Cir.1994); *see Felton*, 940 F.2d at 507–08. Applying the *Grubbs* rule, we therefore give due consideration to Campbell's reference to the FCA.

 Aerospace claims that Campbell, in citing the FCA as the source of public policy, Campbell raised a substantial, disputed question of federal law. We disagree. We hold that Campbell's citation to the FCA did not implicate a federal interest sufficiently substantial to confer federal-question jurisdiction.

We find no compelling federal judicial interest in embracing this case as a federal question. The federal interest in protecting whistleblowers, in order to expose fraud against the government, is sufficiently advanced through the federal scheme. In enacting the FCA, Congress created a very specific private remedy. It carefully established explicit prerequisites to *qui tam* actions, including precise filing requirements.

31 U.S.C. § 3730. Its protection against adverse employment actions extends specifically to employees for their acts "in furtherance of an action under this section." *Id.* § 3730(h). Indeed, to allow a state-law claim to circumvent these requirements and limitations by generically referencing the "public policy" of the FCA would contravene the statute. Thus, the federal interests at stake strongly militate against allowing a backdoor FCA state claim to form the basis of federal jurisdiction. Such a result would derogate the very detailed requirements Congress chose to impose on *qui tam* FCA litigants.

Moreover, Campbell's citation to the federal policy protecting whistleblowers does not alter the fundamental nature of his state-law tort action. Finally, we note that California statutory law establishes the same public policy element as the FCA and provides an alternative state-law theory to support Campbell's case.

We therefore hold that Campbell's incorporation of the FCA as the source of public policy violated did not raise a sufficiently substantial, disputed question of federal law so as to confer federal-question jurisdiction.

## CONCLUSION

We conclude that the district court did not have subject matter jurisdiction over Campbell's case. We reverse and remand this case to the district court with instructions to remand it to the Superior Court of the State of California for the County of Los Angeles.

REVERSED and REMANDED WITH INSTRUCTIONS.

THOMAS, Circuit Judge, concurring in part and dissenting in part:

I concur with Section II of the majority opinion concerning federal jurisdiction under

---

1. If this were the question, the answer clearly would be no. An action filed in state court may be removed only if the district court could have exercised jurisdiction over the action if originally filed there. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In order for a complaint to state a claim "arising under" federal law, it must be clear from the face of the plaintiff's well-pleaded complaint that there is a federal question. Campbell did not allege a specific state or federal theory. In these circumstances, removal would have been improper, because an alternative state-law theory exists-California Labor Code section 1102.5(b). *See Duncan v. Stuetzle*, 76 F.3d 1480, 1486 (9th Cir.1996) ("[I]f a single state-law based theory of relief can be offered for each of the three causes of action in the complaint, then the exercise of removal jurisdiction was improper."); *Ultramar America Limited v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir.1990) ("The fact that an alternative theory of relief exists for each claim alleged in the complaint, one not dependent upon federal law, is itself grounds to defeat federal question jurisdiction.").

the False Claims Act, but respectfully dissent from Section I concerning the impact of ERISA and the judgment.

If ERISA preempts anything, it must preempt an independent claim for punitive damages based on an employer's motive to deny pension benefits. ERISA preemptively regulates such an action by making it unlawful to discharge or discriminate against a plan participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled." 29 U.S.C. § 1140. Indeed, ERISA preempts all state law claims founded on alleged improper processing of pension or other plan benefits. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987) ("Dedeaux's state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved by § 514(b)(2)(A), and therefore is preempted by § 514(a)."); *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 493 (9th Cir.1988) (state common law claims arising from improper claims processing are preempted by ERISA, requiring vacation of judgment "insofar as it awards compensatory and punitive damages arising out of the common law claims").

Under California law, punitive damages may only be awarded if the defendant acted with "fraud, oppression or malice." Campbell sought exemplary damages because Aerospace allegedly acted with malice to reduce or deny his pension benefits. As Campbell acknowledged, he made this accusation to "recover punitive damages from the defendant." Under California law, malice implicates motive. "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." California Civil Code § 3294 (1992).

Federal preemption is ordinarily a federal defense to a plaintiff's suit. However, Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). Complete preemption occurs when the preemptive force of a law is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65, 107 S.Ct. at 1547.

ERISA is a complete preemption statute. *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 138–39, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990). Congress intended it "to establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). Specifically, ERISA preempts any law which "relates to" an employee benefit plan covered by ERISA. *Felton v. Unisource Corp.*, 940 F.2d 503, 508–09 (9th Cir.1991). In a wrongful termination claim, ERISA completely preempts any state law claim which "relates to" an employee benefit plan covered by ERISA. *Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483; *Metropolitan Life*, 481 U.S. at 67, 107 S.Ct. at 1548.

To be sure, "[n]o ERISA cause of action lies when the loss of pension benefits was a mere consequence of, but not a motivating factor behind, the termination of benefits." *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1405 (9th Cir.1988)(quotation and alteration omitted). However, if the employer is alleged to have a pension-defeating motive in terminating the pension benefit, the cause of action "relates to" an ERISA plan and is preempted. *Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483.

The allegations which form the basis of Campbell's independent punitive damage claim are founded on Aerospace's improper motive in attempting to minimize or deny his pension benefits. As such, the independent punitive damage claim is subject to ERISA preemption and federal jurisdiction.

Campbell cites *Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 822 (5th Cir.1994) for the proposition that if only punitive damages are implicated, ERISA does not preempt the state cause of action. However, unlike the plaintiff in *Rozzell*, Campbell's complaint specifically alleged that Aerospace was motivated by a desire to deprive him of pension and employee benefits in its termination decision. When motive is specifically implicated in alleged benefit denial, ERISA preempts. This

conclusion is unavoidable in this instance given the broad preemptive force of ERISA. *See Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483; *Ethridge*, 861 F.2d at 1404.

The majority views Campbell's punitive claim as incidental to his wrongful termination claim, citing *Ethridge* for the proposition that a claim does not relate to ERISA "when the loss of pension benefits was a mere consequence of, but not a motivating factor behind the termination of benefits." *Ethridge*, 861 F.2d at 1405. This may be a plausible construction of Campbell's complaint, but one with which I must respectfully differ. If Campbell had simply used the word "benefits" in the context of his termination claim, as the plaintiff did in *Ethridge*, I would agree. However, Campbell has framed an independent damage claim based on his employer's motive in denying or reducing his pension benefits. Under his theory, his entitlement to punitive damages was not the proximate result of his alleged wrongful discharge, but rather the manner in which Aerospace treated his pension. Campbell has not retreated from this position, nor attempted to reframe his complaint to align it more closely to *Ethridge*. He truly aims for a jury award based upon Aerospace's alleged improper motives in administering his pension.

When a plaintiff seeks significant additional money damages on a theory founded on manipulation of his pension benefits, his claim rises beyond "mere consequence" and becomes subject to ERISA preemption. Thus, although I might personally prefer the rule espoused by the majority, I cannot in good conscience reconcile it with ERISA's exceptionally broad preemptive language, nor with the Supreme Court's and our construction of it.

In the real world of litigation, Fred Campbell has had his day in court. He was fired for alleged sexual harassment, racism, poor performance and running a consulting business out of his office. He countered with a wrongful termination suit, contending he had, in fact, been terminated for whistleblowing. An investigation revealed, among other matters, that he had printed business cards for his personal consulting business listing his Aerospace telephone number; that office contained virtually no evidence of any work he was performing for Aerospace; that he had improperly touched a number of female employees and made inappropriate sexual remarks; that he had never engaged in any "whistleblowing" until he was suspended as a result of numerous complaints by co-workers; and that no fraud had occurred about which one might rightfully blow a whistle. His claims were fully aired before the district court, tried to a jury of his peers, and found to be without merit. I suspect the state trial judge may find it ironic that this case is being returned for litigation anew because the plaintiff has alleged an independent punitive claim, even though all the underlying causes of action have been rejected on the merits after thorough consideration.

The majority, in good faith, has reached a different conclusion. However, because I believe the district court was right on all counts and that our precedent compels a different result, I respectfully dissent from Section I of the opinion and the judgment.