**George W. FALLAR, Plaintiff,**

v.

**COMPUWARE CORPORATION,
a Michigan Corporation,
Defendant.**

**No. CV 00–1650–PHX–ROS.**

United States District Court,
D. Arizona.

March 30, 2002.

Gerald E. Kriehn, Phoenix, AZ, for Plaintiff.

Charles Patrick Keller, Michelle Lynette Ray, Snell & Wilmer LLP, Phoenix, AZ, for Defendant.

**ORDER**

SILVER, District Judge.

## I. INTRODUCTION

The following motions are pending before the Court: Defendant Compuware Corporation's Motion to Dismiss (Doc. # 17); Plaintiff's Response to Motion to Dismiss Alternatively, Motion to File an Amended Complaint (Doc. # 27); Defendant's Motion for Summary Judgment (Doc. # 41); and Defendant's Motion to Strike Plaintiff's Statement of Facts in Support of His Response to Defendant's Motion for Summary Judgment (Doc. # 52).

## II. BACKGROUND

Plaintiff brought this action alleging wrongful termination of his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201 *et seq.*, and the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41–1461 *et seq.* In addition, Plaintiff seeks damages as a result of Defendant's alleged breach of the employment contract that led to the denial of long-term disability benefits, as well as tort damages based on the alleged bad faith of Defendant in terminating Plaintiff's employment.[1]

### A. Factual History

In March 1997, Compuware ("Defendant") hired George Fallar ("Plaintiff") when it purchased Plaintiff's former employer MC2. (Def.'s Statement of Facts ("SOF") ¶ 1). After the acquisition of MC2, Plaintiff maintained his position and duties as a systems analyst for Defendant, reviewing clients' computer programs and testing them for performance. (Pl.'s SOF ¶ 16; Def.'s SOF ¶ 2). At the time of Plaintiff's hiring, Defendant knew that Plaintiff suffered from muscular dystrophy. (Pl.'s SOF ¶ 18; Def.'s SOF ¶ 5). In the fall of 1997, Plaintiff was assigned to the Allied Signal client account and was authorized to telecommute from home. (Def.'s SOF ¶ 7). Defendant paid Plaintiff hourly for work performed on active client accounts and issued him full employee benefits regardless of the number of hours actually worked. (Def.'s SOF ¶ 4).

After completion of the Allied Signal project, Plaintiff could no longer access client accounts from home due to Defendant's routine practice of changing access

1. Because Plaintiff exhausted all administrative remedies available under statute, the Court has subject matter jurisdiction over Plaintiff's ADA claims. *See* 28 U.S.C. § 1331; 42 U.S.C. § 12117; 29 U.S.C. § 1132(e).

Pursuant to 28 U.S.C. § 1367, the Court also has supplemental jurisdiction over Plaintiff's claims arising under Arizona law. (*See* Amend. Compl. ¶¶ 3–5).

passwords. (Pl.'s SOF ¶ 17; Def.'s SOF, Ex. 1 at 11). However, Plaintiff was still able to access his work email account from home. (*Id.*) Plaintiff was not assigned and did not actively work on a client account after completion of the Allied Signal project in 1997. (Pl.'s SOF ¶ 19; Def.'s SOF, Ex. 1 at 19). Plaintiff was informed by Bonnie Parker, an employee of Defendant, that the reason no assignments were given to Plaintiff was that Defendant had no available work. (Def.'s SOF ¶ 11, Ex. 1 at 19). As a result, Plaintiff remained classified by Defendant as an inactive employee after 1997. (Def.'s SOF ¶ 16).

Citing the need to cut costs by eliminating inactive employees, Darrell Williams, Defendant's Director of Resources, terminated Plaintiff's employment with Compuware in December 1998 based on Plaintiff's lack of recent productivity and revenue generation. (Def.'s SOF ¶ 12). Plaintiff, however, never received notice of his 1998 termination from Defendant. (Def.'s SOF ¶ 16). On June 11, 1999, Plaintiff obtained a neurological examination at Barrows Neurological Institute, Muscular Dystrophy Clinic, and made a claim under Defendant's medical insurance benefit plan. (Def.'s SOF, Ex. 1 at 53). After the insurance company denied Plaintiff's claim, Plaintiff contacted Defendant and was informed that he had been terminated due to his inactive status. (Def.'s SOF ¶ 16). At that time, Plaintiff told Darrell Williams that he had not received notice of his 1998 termination. (*Id.*) Therefore, Defendant agreed to reinstate Plaintiff's employment and to provide retroactive benefits to cover Plaintiff's medical insurance claim. (Def.'s SOF ¶ 16). In addition, Defendant notified Plaintiff that "[n]ew client assignment opportunities for your skills may become available in the next thirty days," but if Plaintiff failed to be "successfully placed on a client account" within those thirty days his employment would once again be terminated. (Def.'s SOF, Ex. 4). Defendant rehired Plaintiff in June 1999 with full knowledge of his disability. (Def.'s SOF ¶ 16).

Shortly after his reinstatement, Plaintiff applied for and received short-term disability benefits under Defendant's medical insurance plan administered by UNUM Life Insurance Company ("UNUM"). (Def.'s SOF ¶ 18). The terms of the short-term disability insurance plan stated that "an employee is eligible for coverage if (s)he is an active, full-time salaried Employee who works, a minimum of 40 hours per week and has completed 90 days of full-time employment." (Def.'s SOF, Ex. 7). Defendant paid Plaintiff $14,504.96 in short-term disability benefits under the plan in 1999. (Def.'s SOF, Ex. 1 at 41).

On August 5, 1999, after Plaintiff failed to receive any new client assignments following his reinstatement in June 1999, Darrell Williams once again terminated Plaintiff's employment. (Def.'s SOF ¶ 19). Subsequent to his second termination, Plaintiff filed a claim for long-term disability benefits under Defendant's medical insurance plan also administered by UNUM. (Def.'s SOF ¶ 22). The provisions of the long-term plan set forth the following eligibility requirements:

> All full-time United States employees working at least 30 hours per week in active employment.
> ACTIVE EMPLOYMENT means you are working for your employer for earnings paid regularly and that you are performing the material and substantial duties of your occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

(Def.'s SOF, Ex. 9). UNUM denied Plaintiff's long-term disability claim, stating that he did not meet eligibility criteria because "[b]y [his] own admission [he] had not worked for Compuware, since November or December 1998." (*Id.*)

## B. Procedural History

On August 28, 2000, Plaintiff filed a Complaint with this Court alleging the following four causes of action under the ADA, ACRA, and the common law of Arizona:

*First Cause of Action:* Defendant "violated the ADA when it refused to undertake reasonable accommodations to allow plaintiff to engage in gainful employment."

*Second Cause of Action:* Defendant "discriminated against the plaintiff in violation of [ACRA]."

*Third Cause of Action:* "Defendant breached the agreement to provide employment and related benefits to plaintiff."

*Fourth Cause of Action:* Defendant "acted in bad faith" and "for [its] own self interest and [for the] intentional deprivation of the interests of the plaintiff."

(Compl.¶¶ 26–38) (Doc. # 1). Plaintiff subsequently filed an Amended Complaint on December 26, 2000 that changed neither the form nor the substance of the original Complaint (Doc. # 3). Defendant filed a Motion to Dismiss Counts III and IV of the Amended Complaint on April 3, 2001 based on Plaintiff's failure to state viable causes of action (Doc. # 17). Plaintiff filed a Response to Motion to Dismiss Alternatively, Motion to File an Amended Complaint (Doc. # 27). On October 19, 2001, Defendant filed a Motion for Summary Judgment on all four causes of action (Doc. # 41). After Plaintiff filed a Response to Defendant's Motion for Summary Judgment (Doc. # 48), Defendant filed a Motion to Strike Plaintiff's Separate Statement of

Facts in Support of His Response to Defendant's Motion for Summary Judgment on December 12, 2001 (Doc. # 52). On March 8, 2002, the Court heard oral arguments on all the pending motions ("Hearing").

Defendant filed the Motion to Dismiss Counts III and IV of the Complaint prior to filing a Motion for Summary Judgment. Accordingly, the Court will first address the Motion to Dismiss based on the pleadings and the concomitant Motion for Leave to File an Amended Complaint before addressing the merits of the Motion for Summary Judgment.[2]

## III. MOTION TO DISMISS

### A. Standard of Review

A court should not grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) unless there is no set of facts that a plaintiff could prove upon which relief could be granted. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986). In ruling on a motion to dismiss, a court must take all material allegations in the complaint as true and construe all facts in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).

### B. Discussion

**1. Employee Retirement Income Security Act preemption of Plaintiff's claim for breach of the agreement to pay medical benefits**

■ Where an employee alleges that the employer wrongfully terminated or

---

**2.** Whenever a district court looks beyond the pleadings in evaluating a motion to dismiss, the motion must be treated as one for summary judgment under Rule 56. *See* Fed. R.Civ.P. 12(b); *see also Grove v. Mead Sch. Dist. No. 354,* 753 F.2d 1528, 1532 (9th Cir.

1985) (citing *Portland Retail Druggists Assoc. v. Kaiser Found., Health Plan,* 662 F.2d 641, 645 (9th Cir.1981)). Therefore, the Court will address only the pleadings in evaluating the Motion to Dismiss.

breached the employment agreement to avoid paying long-term disability benefits, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a), preempts the claim. *Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1313 (9th Cir. 1997).

In *Campbell*, the Ninth Circuit discussed ERISA preemption of state law claims against employers for wrongful termination. *Id.* After being terminated from his employment with Aerospace, the plaintiff filed suit in California state court alleging, among other things, that he was wrongfully discharged in violation of public policy for "blowing the whistle" on Aerospace. *Id.* at 1310. In his claim for wrongful discharge the plaintiff stated that "defendants knew that terminating plaintiff after long years of service would . . . require plaintiff to be without certain benefits." *Id.* Reviewing the district court's determination that ERISA applied to the plaintiff's wrongful termination claim, the Ninth Circuit stated:

> In determining whether ERISA preempts state common law causes of action for wrongful discharge, both the Supreme Court and the Ninth Circuit have focused on the employer's alleged motivation in terminating the employee, concluding that a claim is preempted when the complaint alleges that "the employer had a pension-defeating motive in terminating the employment."

*Id.* at 1312 (quoting *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). The Ninth Circuit noted a distinction between claims alleging that the employer's motive in discharge was to deny benefits, and those simply alleging the loss of benefits as a consequence of the tortious discharge. *Id.* Therefore, the court concluded: "we have held that where the plaintiff's claim or theory alleged that the employer terminated the employee to avoid paying benefits

or sought to prevent the employee from obtaining benefits, ERISA preempted the claim." *Id.* at 1313 (citing *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124 (9th Cir.1992); *Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir.1991); *Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987)). However, because the "substance of [the plaintiff's] claim was wrongful termination in retaliation for whistle-blowing activities" and not for the deprivation of benefits per se, the court held that ERISA did not preempt the plaintiff's claims. *Campbell*, 123 F.3d at 1314.

Similarly, in *Sorosky*, the Ninth Circuit held that ERISA preempted a plaintiff's breach of contract and wrongful discharge claims because plaintiff alleged that the employer agreed to provide benefits and then terminated him to avoid paying those benefits. 826 F.2d at 800. In so holding, the court stated that the plaintiff's claims were preempted "to the extent that [the claims] refer to an employee benefit plan" but not "to the extent [the claims rely] on theories independent of the benefit plan." *Id.*

■ The third and fourth causes of action alleged in Plaintiff's Complaint make no reference to Defendant's motivation to avoid paying benefits to Plaintiff. (Compl. at 5–6). Therefore, Plaintiff's causes of action would survive Defendant's Motion to Dismiss on the basis of ERISA preemption under *Campbell*. *See Campbell*, 123 F.3d at 1313.

Although Plaintiff can withstand a motion to dismiss, his subsequent pleadings allege that the third and fourth causes of action are based on Defendant's breach of the employment agreement "based in part on the failure to . . . pay benefits," and for wrongful termination in bad faith "premised on the failure of the defendant to provide the employment benefits due and contracted for, namely, disability benefits."

(Pl.'s Resp. to Mot. to Dismiss at 1, 3). Further, in Plaintiff's Statement of Facts in Support of His Response to Defendant's Motion for Summary Judgment, Plaintiff acknowledges that one of Defendant's motives in terminating him was to avoid paying him disability benefits. (Pl.'s SOF ¶ 11). These alleged motives elucidate precisely the types of claims the Ninth Circuit has found to be related to employment benefit plans under ERISA because they allege that Defendant's conduct was motivated by a desire to avoid paying Plaintiff long-term disability benefits. *See Campbell,* 123 F.3d at 1313; *Sorosky,* 826 F.2d at 800. Because Defendant also moved for summary judgment on ERISA preemption, Plaintiff's claims for breach of contract and bad faith are preempted to the extent the claims rely on Defendant's motive in avoiding the payment of benefits under an ERISA plan. Therefore, Defendant is entitled to summary judgment on Plaintiff's third and fourth causes of action under state law because, looking beyond the pleadings, the actions are preempted by ERISA. *See* Fed.R.Civ.P. 12(b); *see also Grove v. Mead Sch. Dist. No. 354,* 753 F.2d 1528, 1532 (9th Cir.1985) (holding that whenever a court looks beyond the pleadings in evaluating a motion to dismiss, the motion should be treated as a motion for summary judgment under Rule 56).

## 2. The Arizona Employment Protection Act preemption of Plaintiff's tort claim for bad faith based on a violation of public policy

■ Plaintiff asserts that his tort claim for bad faith is premised on two theories: bad faith in terminating Plaintiff to avoid paying him disability benefits; and bad faith in terminating Plaintiff in violation of public policy based on his disability. (Pl.'s Resp. to Mot. to Dismiss at 3). Because

Plaintiff's first theory of bad faith is preempted by ERISA,[3] the Court will address the second theory of bad faith liability as it pertains to the Arizona Employment Protection Act ("EPA"), A.R.S. § 23–1501.

■ Arizona does not recognize a "general" tort claim based on bad faith in employment termination cases. *Nelson v. Phoenix Resort Corp.,* 181 Ariz. 188, 888 P.2d 1375, 1384 (1995). However, the Arizona Supreme Court has recognized exceptions to the general at-will doctrine of employment. *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 710 P.2d 1025, 1031–41 (1985), *superseded in part by* A.R.S. § 23–1501. Determining that an at-will employee "may be fired for good cause or for no cause, but not for bad cause," the Arizona Supreme Court established three exceptions to the at-will employment doctrine that allow an employee to sue his employer based on the discharge: (1) the public policy exception; (2) the personnel policy manual exception; and (3) the good faith and fair dealing exception. *Wagenseller,* 710 P.2d at 1031–41. Addressing the public policy exception, the court concluded that the exception allows an employee to sue his employer if his discharge violates public policy established by the legislature or common law. *Id.* at 1033–34. Turning to the personnel policy manual exception, the court explained that the exception allows an employee to sue the employer for breach of an agreement set forth in an employee handbook that modifies the at-will status of the relationship. *Id.* at 1037–38. Finally, the court addressed the implied covenant of good faith and fair dealing exception in the at-will context and concluded:

In the case of an employment-at-will contract, it may be said that the parties have agreed, for example, that the em-

3. *See supra* section III(B)(1).

ployee will do the work required by the employer and that the employer will provide the necessary working conditions and pay the employee for work done. What cannot be said is that one of the agreed benefits to the at-will employee is a guarantee of continued employment or tenure. The very nature of the at-will agreement precludes any claim for prospective benefit.

*Id.* at 1038.

Based on the Arizona Supreme Court's decision in *Wagenseller,* the Arizona legislature passed the EPA in 1996. *See* A.R.S. § 23–1501; *Cronin v. Sheldon,* 195 Ariz. 531, 991 P.2d 231 (1999). In particular, the legislature included a preamble to the statute, which stated that the statute was, in part, a response to the *Wagenseller* decision. EPA Ch. 140, § 1, para. A, 1996 Ariz. Sess. Laws 683, 684; *but see Cronin,* 991 P.2d at 231 (striking down the EPA preamble as unconstitutional). The EPA states that, though contractual in nature, the employment relationship is terminable at-will by either the employer or the employee. *See* A.R.S. § 23–1501(1), (2). Under the EPA, an employee may only bring a claim for wrongful termination against the employer if: (a) the employer breaches a written contract that modified the at-will status of the relationship; (b) the employer violates a statute of the state in terminating the employee; (c) the employer terminates the relationship in retaliation for certain enumerated employee actions (e.g., "whistleblowing"); or (d) the employer violates the continued employment rights of a public employee. *Id.* The EPA is the exclusive remedy for terminations that violate public policy statutes, and a plaintiff is therefore limited to the remedies provided under statute. A.R.S. § 23–1501(3)(b); *see Cronin,* 991 P.2d at 236.

In *Cronin,* the Arizona Supreme Court held that the EPA's exclusive remedies provision was constitutional. 991 P.2d at 242. In addressing petitioners' ACRA-based claims for tortious wrongful termination, the court stated:

Importantly, the EPA does not preclude recovery of compensatory damages under federal law within parameters authorized by Title VII[,] nor does it preclude wrongfully terminated employees from pursuing collateral common law tort claims related to discharge from employment, including intentional infliction of emotional distress[,] negligent infliction of emotional distress[,] interference with contractual relations[,] or defamation . . . .

In sum, while the EPA precludes petitioners' ACRA-based claims for compensatory and punitive damages for tortious wrongful discharge, a panalopy of constitutionally protected common law tort remedies remains undisturbed as fully beyond the scope of the EPA.

*Id.* at 241.

■ Plaintiff concedes that the EPA limits his claims to the extent that "they pertain to the wrongful discharge to the remedies provided by the Federal and State civil rights act violations." (Pl.'s Resp. to Mot. Dismiss at 3). Plaintiff's only remedies, therefore, are those available under the ADA and ACRA for disability discrimination, not in tort for bad faith. *See* A.R.S. § 23–1501(3)(b). In addition, though bad faith claims may apply to contractual damages, there is no general tort for bad faith arising out of the termination of employment contracts recognized under Arizona law. *See Nelson,* 888 P.2d at 1384. However, even assuming *Wagenseller* recognized a general tort for bad faith (as Plaintiff argues), Plaintiff's claim fails because it is based on prospective long-term disability benefits rather than on benefits already earned. *See Wagenseller,* 710 P.2d at 1038 (reject-

ing claims for prospective benefits based on the at-will employment relationship). Therefore, because Plaintiff's bad faith claim is not cognizable under Arizona law, it must be dismissed. Fed.R.Civ.P. 12(b)(6).

### 3. Effect of the statute of limitations on breach of employment agreement

Actions under Arizona law for breach of a written employment contract must be brought within one year from the time of breach. A.R.S. § 12–541(3); *see Angus Medical Co. v. Digital Equip. Corp.*, 840 P.2d 1024 (Ariz.Ct.App.1992).

■ Defendant Compuware terminated Plaintiff on August 5, 1999. (Def.'s SOF ¶ 19). Plaintiff filed his Complaint on August 28, 2000, one year and twenty-three days after his termination. Plaintiff has neither produced evidence to support, nor even alleged, that Defendant breached a contract other than the implied employment-at-will contract, which terminated at the moment Plaintiff was discharged. Therefore, even if the Court determined that Plaintiff's claims were not preempted by ERISA, his state claim for breach of an employment contract under the third cause of action is barred by the one year statute of limitations under A.R.S. § 12–541(3) and must be dismissed. Fed.R.Civ.P. 12(b).

## IV. MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

### A. Standard of Review

■ Leave to amend "shall be freely given when justice so requires." Fed. R. Civ.P. 15(a). Yet despite the liberal policy favoring amendments, if amending the complaint would not correct the deficien-

cies or would otherwise be futile, amendment should be denied. *See Barber v. Hawaii*, 42 F.3d 1185, 1197–98 (9th Cir. 1994) (finding that a futile amendment was properly denied despite the liberal policy allowing amendments). Accordingly, the Court must assess the appropriateness of Plaintiff's Motion to File an Amended Complaint in light of its discussion of Defendant's Motion to Dismiss. *See supra* section III(B)(1)-(3).

### B. Discussion

■ In addition to filing a Response to Defendant's Motion to Dismiss, Plaintiff filed "Alternatively, Motion to File an Amended Complaint" (Doc. # 27). Plaintiff asked the Court "for leave to file an amended complaint specifying the contract breached by the defendant [under the third cause of action]." (Pl.'s Resp. to Def.'s Mot. to Dismiss, Alternatively Mot. to File an Amend. Compl. at 1). The Court concluded that Plaintiff's claims under breach of contract for Defendant's failure to pay benefits are both preempted by ERISA[4] and limited by the EPA.[5] Moreover, any additional breach of an employment contract claim is barred by the one year statute of limitations under Arizona law.[6] During the Hearing, counsel for Defendant raised several additional futility arguments in opposition to Plaintiff's Motion for Leave to Amend the Complaint: exhaustion of administrative remedies; statute of limitations for an ERISA action; and factual futility based on Plaintiff's failure to qualify for long-term disability benefits. (Hr'g Tr. at 3–6). Defendant's counsel also addressed the potential prejudicial effect to Defendant if Plaintiff were permitted to amend the Complaint to state a cause of action under ERISA. (*Id.* at 6–7).

4. *See supra* section III(B)(1).

5. *See supra* section III(B)(2).

6. *See supra* section III(B)(3).

In light of the foregoing, the Court will grant Plaintiff's Motion for Leave to Amend the Complaint to attempt to state a nonfrivolous cause of action under ERISA. However, in determining whether to file an amended complaint, Plaintiff *must* consider, before filing the motion, the issues set forth above and raised during the Hearing, including: ERISA statute of limitations; factual futility, exhaustion of administrative remedies; and potential prejudice to Defendant.

## V. MOTION TO STRIKE [7]

Defendant asserts several grounds for striking Plaintiff's Statement of Facts in the Motion to Strike. The Court will address each reason separately.

### A. Inconsistent statements

 In reviewing a motion for summary judgment, a court must take the non-movant's evidence as true, and all inferences are to be drawn in the light most favorable to the non-movant. *Eisenberg,* 815 F.2d at 1289. However, a party cannot avoid summary judgment by creating a sham issue of fact—one that directly contradicts prior testimony. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 265 (9th Cir. 1991). A party is bound by major inconsistencies in fact only if they remain unexplained. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1157 (9th Cir.1999). Because Defendant alleges that Plaintiff's affidavit constitutes a sham issue of fact, in ruling on Defendant's Motion to strike the Court must consider whether the inconsistency is major or minor, the result of an honest mistake or discrepancy, or the result of newly discovered evidence. *See id.* at 1158.

Defendant has moved to strike the following facts from Plaintiff's Statement of Facts in Support of Response to Defendant's Motion for Summary Judgment:

Plaintiff was aware of jobs which he was qualified for that were offered by Compuware. (Pl.'s SOF ¶ 20);

Based on his qualifications and the positions advertised there was work which was available at Compuware but was not offered to plaintiff. (Pl.'s SOF ¶ 23);

A copy of web page advertising "web developer" positions at Compuware. (Pl.'s SOF, Ex. 3);

Thereafter, I received no other assignments from Compuware. No telecommuting connections were installed. Limited, if any, communication was initiated by Compuware. In December 1998, I was told by letter from Bob Baverman of Compuware that I had been assigned to team and that Bonnie Foster would be my new team leader as of January 1, 1999. A copy of the letter is attached as exhibit I to my declaration. (Pl.'s SOF, Ex. 1 at ¶ 8);

I then talked to Bonnie Foster and advised her that I was ready and wanted work assigned as soon as possible. We discussed my physical limitations as well as alternative manners to meet with her and her team. I detailed the means by which I had worked with mc2 and their accommodations of my disability and telecommuting while still providing a good product to their clients. (Pl.'s SOF, Ex. 1 at ¶ 10).

(Def.'s Mot. to Strike at 7–10). Defendant argues that these statements are inconsistent with Plaintiff's prior sworn testimony at his deposition. In particular, Defendant

---

[7]. After reviewing Defendant's Motion to Strike, the Court is inclined to grant the motion and strike portions of Plaintiff's statement of facts. *See infra* section V. However, because the Court concludes that Defendant is entitled to summary judgment on all counts regardless of the matters at issue in the Motion to Strike, the Court will deny the Motion to Strike as moot. *See infra* section VI. Therefore, the Court will only briefly discuss issues raised in the Motion to Strike.

challenges Plaintiff's statements regarding alternative positions and work available at the time of his termination, which Plaintiff repeatedly denied knowledge of during his deposition. (*See* Def.'s SOF, Ex. 1 ("Pl.'s Dep.") at 19, ll. 18–24, 25, ll. 8–12).

In reviewing a motion for summary judgment the Court's focus is on whether material issues of fact exist that warrant a trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. "Credibility determinations ... are jury functions, not those of a judge[.] The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. While the content of Plaintiff's enumerated facts certainly raise credibility questions in light of Plaintiff's deposition, the Court finds that they do not rise to the level of the major and material inconsistencies necessary to create sham issues of fact. *See Grupo,* 198 F.3d at 1159. Moreover, it is not appropriate for the Court to reject Plaintiff's evidence simply on the basis of disbelief—such disbelief will not support granting a motion for summary judgment. *See id.* The credibility of Plaintiff's purportedly inconsistent statements may be properly challenged at trial; however, during summary judgment they are entitled to a presumption of truth. *Id.* at 1158. Therefore, Defendant's Motion to Strike based on inconsistent facts should be denied. *See Kennedy,* 952 F.2d at 265.

**B. Evidence Produced after the Close of Discovery**

 In opposing a motion for summary judgment a party may not rely on evidence produced after the close of discovery. Fed.R.Civ.P. 37(c). A district court shall sanction a party who violates a discovery order, and may exercise its discretion to impose the following sanctions: requiring the delinquent party to pay the reasonable fees incurred by the opposing party as a result of the failure to comply with the order; striking portions of submitted pleadings; establishing facts or precluding evidence on certain issues; or rendering a default judgment against the non-complying party. *United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365, 1369 (9th Cir.1980).

In response to Defendant's Motion for Summary Judgment on the issue of reasonable accommodations under the ADA, Plaintiff produced a copy of a web-site advertising other positions available at Compuware for which he was allegedly qualified. (Pl.'s SOF, Ex. 3). Defendant argues that Plaintiff's web-site evidence should be stricken because it was produced after the close of discovery and in violation of the Court's Rule 16 Scheduling Order setting forth discovery deadlines and potential penalties for violations. (Order at 2) (Doc. # 16). Plaintiff conceded at the Hearing that the evidence was neither disclosed nor produced during discovery, but stated "I don't think it's real material" after noting that the web-site was maintained by Defendant. (Hr'g Tr. at p. 29).[8]

The Court concludes that Plaintiff's evidence, clearly and admittedly produced after the close of discovery, should be strick-

---

8. In addition, at the Hearing Plaintiff argued that the evidence in question would have to be produced in Arizona state court, but not in federal court. (Hr'g Tr. at 29). Although the Federal Rules of Civil Procedure may differ from the Arizona Rules of Civil Procedure, the parties are bound by the Federal Rules and Court's Rule 16 Order, which requires that all evidence that counsel intends to rely on must be provided at the close of discovery. (Order at 2) (Doc. # 16). Therefore, counsel's argument is unavailing as applied to this case. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 62, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (stating that a district court may sanction a party for violating a court order regarding discovery).

en in accordance with Fed.R.Civ.P. 37(c) and the Court's Rule 16 Order for violations of discovery. Accordingly, Plaintiff should not be allowed to rely on Exhibit 3 of his Statement of Facts to overcome Defendant's Motion for Summary Judgment.

## C. Imputation of Respondeat Superior Liability

■ An employer may be held vicariously liable for the unlawful acts of one employee against another if the acting employee has supervisory authority and the unlawful act leads to an adverse employment action. *See Burlington Industries v. Ellerth,* 524 U.S. 742, 763–64, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807–08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burrell v. Star Nursery, Inc.,* 170 F.3d 951, 955–56 (9th Cir.1999); *see also Hogan v. Henderson,* 102 F.Supp.2d 1180, 1188 (D.Ariz.2000) (applying *Burrell* to a racial discrimination case).

In *Burrell,* the Ninth Circuit discussed the employer's liability for a supervisory employee who created a "hostile work environment" in violation of Title VII. *Id.* at 955. Applying the rule articulated by the United States Supreme Court in *Burlington,* the court stated:

> the new rule focuses on whether the harasser has immediate or successively higher authority over the victim of harassment, not on whether the employee knew about the harassment. Thus, if the harassment is actionable and the harasser has supervisory authority over the victim, we presume that the employer is vicariously liable for the harassment.

*Id.* at 956 (citations omitted).

Defendant argues that the Court should strike portions of Plaintiff's facts that attempt to impute liability to Compuware based on Plaintiff's conversations with Bonnie Foster, because he "did not believe Ms. Foster had any supervisory authority." (Mot. to Strike at 9). It is unclear, under Ninth Circuit law, whether the supervisory authority rule for vicarious liability applies to claims of disability discrimination under the ADA. However, the Ninth Circuit generally applies Title VII discrimination law to claims arising under the ADA because both statutes have similar enforcement schemes. *See, e.g., Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1093 (9th Cir.2001) (applying Title VII analysis to an ADA claim); *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243 (9th Cir.1999) (applying Title VII burdens to a disability discrimination claim under the ADA). Therefore, it is likely that the supervisory rule under *Burrell* would apply to Plaintiff's ADA claim. Accordingly, Plaintiff's conversations with Bonnie Foster would be insufficient to impute vicarious liability to Compuware because Plaintiff did not believe that she had supervisory authority and has not offered evidence suggesting that Ms. Foster actually did have supervisory authority. (Pl.'s Dep. at 17–18). Paragraphs 8 and 10 of Plaintiff's affidavit should therefore be stricken.

## D. Relevance

Evidence that tends to prove or disprove the existence of consequential facts is relevant. Fed.R.Evid. 401. Only relevant evidence is admissible at trial, and also, therefore, during a motion for summary judgment. Fed.R.Evid. 402; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ To support his claim that Defendant failed to reasonably accommodate his disability, Plaintiff offered a copy of a website advertising a position for web-designers as evidence in support of his contention that Defendant had other jobs to which Plaintiff could have been reassigned.

(Pl.'s SOF, Ex. 3). However, the web-site is dated November 18, 1999, more than three months after Plaintiff's termination. (*Id.*) Because there is no direct evidence indicating that this position was available at the time of his discharge, Defendant argues that the evidence is irrelevant, inadmissible, and has "no evidentiary weight [ ] because it doesn't establish that there were positions open when he was working for us." (Hr'g Tr. at 26).

■ Whether evidence is relevant is a matter left to a trial court's discretion. *United States v. Komisaruk*, 885 F.2d 490 (9th Cir.1989). In this instance, the Court concludes that the evidence, though questionable, is relevant to prove the existence of open positions in Compuware because a jury could conclude that it is more probable than not that positions were available at the time of Plaintiff's discharge. Although the evidence may not be sufficient to persuade a trier of fact that there were positions open at the time of Plaintiff's discharge, assigning weight to evidence is reserved for the jury not the Court. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. Therefore, the web-site evidence would not be stricken as irrelevant for the purpose of opposing the Motion for Summary Judgment.

## VI. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate where no genuine issue exists as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of establishing that there is no genuine issue of material fact. *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party makes a properly supported motion, the non-moving party has the burden of presenting specific facts showing that contradiction is possible. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950–52 (9th Cir.1978). It is not enough for the non-moving party to point to the mere allegations or denials contained in the pleadings; instead, it must set forth, by admissible evidence, specific facts demonstrating the existence of an actual issue for trial, and that the trier of fact could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. In reviewing a motion for summary judgment, a court must take the non-movant's evidence as true, and all inferences are to be drawn in the light most favorable to the non-movant. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir.1987).

Defendant, having moved for summary judgment, bears the burden of "com[ing] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted). Once the moving party comes forward with sufficient evidence, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

### B. Discussion

**1. Plaintiff's disability discrimination claim under the ADA and ACRA** [9]

#### a. Disparate treatment

■ A plaintiff carries the initial burden of proving a prima facie case of

---

**9.** Because ACRA is modeled after and virtual- ly identical to the ADA, the Court will com-

disparate treatment under the ADA by either direct or circumstantial evidence. *See McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (articulating the burden-shifting analysis in discrimination cases); *Snead,* 237 F.3d at 1093 (applying Title VII analysis to an ADA claim); *Nunes,* 164 F.3d at 1246 (applying *McDonnell Douglas* to analyze a claim under the ADA). A plaintiff having no direct evidence of discrimination must prove the following: (1) that he is an individual with a disability; (2) that he was qualified to perform the essential functions of his position with or without accommodations; and (3) that he was discharged because of his disability. *See Nunes,* 164 F.3d at 1246. Once a plaintiff proves a prima facie case of discrimination, the burden shifts to the defendant to rebut by offering a non-discriminatory reason for the termination. *See id.* at 1247 (applying the burden-shifting analysis to the ADA). If the defendant offers a non-discriminatory reason, then the "presumption of discrimination 'simply drops out of the picture.'" *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The burden then shifts back to the plaintiff to demonstrate that the non-discriminatory reason offered by the defendant was merely a pretext for unlawful disability discrimination either by direct evidence of a discriminatory motive or by circumstantial evidence that is specific and substantial. *See Godwin v. Hunt Wesson Inc.,* 150 F.3d 1217, 1222 (9th Cir.1998); *Bradley,* 104 F.3d at 270 (citing *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir.1994)).

In *Godwin,* the Ninth Circuit clarified the applicable burden-shifting standards required in a disparate treatment case under Title VII. 150 F.3d at 1219. Applying the burden shifting standards of *McDonnell Douglas,* the court concluded that in order to prove that an articulated legitimate reason was merely a pretext for discrimination a plaintiff must come forward with direct evidence of discriminatory motive or "circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Id.* at 1221–22. When a plaintiff comes forward with direct evidence, the court stated, "it need be very little." *Id.* at 1221. However, a plaintiff relying on circumstantial evidence must come forward with " 'specific' and 'substantial' [evidence] in order to create a triable issue with respect to whether the employer intended to discriminate." *Id.* at 1222.

 It is undisputed that Plaintiff was both disabled and qualified, and that Defendant knew of Plaintiff's disability during both the initial and rehiring process. (Pl.'s SOF ¶ 18; Def.'s SOF ¶¶ 5, 16). In addition, Plaintiff has presented evidence of other available jobs as well as statistics concerning Compuware's financial viability to support his claim for disability discrimination. (Pl.'s SOF ¶ 27, Ex. 3). This evidence, though circumstantial, satisfies Plaintiff's minimal burden to establish a prima facie case that the "employment decision was based on a discriminatory criterion." *Diaz v. Am. Tel. & Tel.,* 752 F.2d 1356, 1361 (9th Cir.1985). Defendant, in order to satisfy its shifting burden, asserts that Plaintiff was terminated pursuant to the terms of his reinstatement because Plaintiff received no work assignments. (Def.'s SOF ¶¶ 11–12). Plaintiff has not provided any evidence in rebuttal

bine its analysis of these statutes. *See Ransom v. State Bd. of Regents,* 983 F.Supp. 895, 899 n. 3 (D.Ariz.1997) (citing Arizona cases that recognize the virtually identical scope and purpose of the ACRA and ADA and therefore apply ADA cases as highly persuasive).

to show that he lost his job because of his disability, nor has he proved that the lay-off was merely a pretext for discrimination under the ADA. In fact, Plaintiff concedes that there is no real issue of disparate treatment; rather, he asserts that the real issue "is [Defendant's] lack of any accommodation of the plaintiff's muscular dystrophy." (Pl.'s Resp. to Def.'s Mot. for Sum. J. at 2). Therefore, to the extent that the Complaint alleges a disparate treatment claim, Defendant is entitled to summary judgment.[10] Moreover, Plaintiff has not met his burden of proving that Defendant's termination rationale was merely a pretext for discrimination. *See Godwin,* 150 F.3d at 1221–22. Plaintiff has produced no direct evidence of discrimination and no circumstantial evidence that is either specific or substantial. *See id.* In addition, because Mr. Williams was in charge of both the hiring and firing of Plaintiff, Defendant is entitled to a strong inference of a non-discriminatory motive. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1286 (9th Cir.2000). Plaintiff has failed to overcome the Defendant's evidence and legal presumptions that justify Plaintiff's termination for legitimate reasons. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of disparate treatment on the basis of his disability. Fed.R.Civ.P. 56(c).

### b. Reasonable Accommodations

■■■■ The ADA prohibits employers from discriminating against employees by "not making reasonable accommodations to the known [limitations of an employee]." 42 U.S.C. § 12112(b)(5)(A); *see also* EEOC Regulations to Implement the Equal Employment Provisions of the ADA, 29 C.F.R. § 1630.9.[11] "[A plaintiff] bears the initial burden of showing that 'the suggested accommodation would, more probably than not, have resulted in his ability to perform the essential functions of his job.'" *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1176 (9th Cir.1998) (citing *Buckingham v. United States,* 998 F.2d 735, 742 (9th Cir.1993)).[12] Once plaintiff satisfies his burden by demonstrating a viable accommodation the burden shifts to the employer to demonstrate that the suggested accommodation is unreasonable. *Mustafa,* 157 F.3d at 1176. Assessing the potential accommodation of a disabled employee may, in certain circumstances, require the employer to initiate "an informal, interactive process with the qualified individual." 29 C.F.R. § 1630.2(*o*)(3). This is especially true where the employer knows that the employee is experiencing difficulty in the workplace as a result of his disability. *Barnett v. U.S. Air., Inc.,* 228 F.3d 1105,

---

10. Plaintiff initially referenced a claim for disparate treatment in the Complaint by asserting that Defendant's reasons for his termination were merely a pretext for discrimination and by providing evidence of Compuware's financial status. However, Plaintiff has abandoned any disparate treatment argument in his Response by stating that disparate treatment is not the issue in this case, and by clearly addressing only the reasonable accommodations claim during the Hearing. (Pl.'s Resp. to Def.'s Mot. for Sum. J. at 2; Hr'g Tr. at 16–19).

11. Considerable weight should be given to an agency's interpretation of a statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*

*Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under Ninth Circuit law, deference is given to an agency's interpretation of a statute that Congress has entrusted it to administer. *See Trustees of Calif., State Univ. v. Riley,* 74 F.3d 960, 964 (9th Cir.1996). Therefore, the Court should only reject the EEOC's guidelines if they are contrary to the clear intent of Congress in enacting the ADA, or if they frustrate the ADA's purpose. *See id.*

12. Although both cited cases are based on claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794, "[i]nterpretations of the ADA are guided by Rehabilitation Act precedent." *Nunes,* 164 F.3d at 1248 n. 2.

1112 (9th Cir.2000); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001). The interactive process is "a mandatory rather than a permissive obligation on the part of employers under the ADA ... and is triggered by an employee or an employee's representative *giving notice of the employee's disability and the desire for accommodation.*" *Barnett*, 228 F.3d at 1114 (emphasis added). Appropriate reasonable accommodations may include "job restructuring, part-time or modified work schedule, reassignment to a vacant position, acquisition or modification of equipment or devices," as well as "modifications or adjustments that enable [the disabled employee] to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(*o*); *see also* 42 U.S.C. § 12111(9)(B).

In *Barnett*, the Ninth Circuit discussed when an employer is obligated to initiate the interactive process without an employee's request for accommodation. 228 F.3d at 1109. After reviewing the legislative history of the ADA, the EEOC's enforcement guidelines, and case law from other circuits, the court concluded that in some circumstances the employer should initiate the interactive process without a request from the employee. *Id.* at 1112. Therefore the court stated that the employer must initiate interaction if the employer:

> (1) Knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, *and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation.*

*Id.* (emphasis added).

In *Lucky*, the Ninth Circuit applied *Barnett* and denied a plaintiff's claims that her employer violated the ADA by not initiating the interactive process. *Lucky*, 246

F.3d at 1187. Based on the plaintiff's failure to request an accommodation, the defendant's lack of knowledge that the plaintiff was experiencing problems at work, and the absence of proof that plaintiff was unable to make a request, the court concluded that "Lucky stores had no duty to provide an accommodation for [the plaintiff]." *Id.* at 1188–89.

■ Plaintiff must first prove that Defendant denied him reasonable accommodations that would have otherwise allowed him to perform the essential functions of his job. *See Mustafa*, 157 F.3d at 1176. Plaintiff alleges that Defendant failed to reasonably accommodate him by neglecting to upgrade his telecommuting device, reassign him to other vacant positions in the company, and engage in the interactive process. (Pl.'s Resp. to Def.'s Mot. for Sum. J. at 2–4). However, Plaintiff has not alleged that any of these failures would have allowed him to receive work, perform the essential functions of his job, and prevent his inactive status. Insofar as Plaintiff claims that he was not receiving work because of his disability he has the burden of proving that, with the suggested accommodations, he would have received work. *See Mustafa*, 157 F.3d at 1176; *Barnett*, 228 F.3d at 1111. Plaintiff has not met this burden. Plaintiff has produced no evidence that there was work available for Defendant to assign him and that the denial of his suggested accommodations prevented him from performing the available work. In fact, Defendant acknowledges that Plaintiff was both qualified and able to perform his job in his current condition, but that there was simply no work available for Defendant to assign. (*See* Def.'s Mot. Sum. J. at 5; Def.'s SOF ¶ 11). In addition, Defendant informed Plaintiff that no work was available and rehired him with retroactive benefits on the condition that if he did not receive work within

thirty days he would be terminated again. (Def.'s SOF ¶¶ 10, 28). Therefore, Plaintiff cannot establish a viable claim for reasonable accommodations because he has not met his initial burden of proving that the suggested accommodations would have resulted in his ability to perform the essential functions of his position. *See Mustafa*, 157 F.3d at 1176.

██ Even if the Court were to conclude that Plaintiff established the availability of reasonable accommodations under the *Mustafa* burden, Defendant was not obligated in this case to initiate the informal process because there is no evidence that Defendant "[knew] or [had] reason to know, that the disability [prevented Plaintiff] from requesting a reasonable accommodation." *Barnett*, 228 F.3d at 1112. Plaintiff's claim for failure to reasonably accommodate would still fail because it is undisputed that he never requested an accommodation, and therefore never gave Defendant "notice of the employee's disability and the desire for accommodation" as is required to invoke the employer's obligations under *Barnett*. *Id.* at 1114. Therefore, Defendant is entitled to summary judgment on Plaintiff's reasonable accommodation claim. Fed.R.Civ.P. 56(c).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. # 17) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint (Doc. # 27) is **GRANTED**. Plaintiff shall have **FIFTEEN (15) DAYS** from the entry of the Order to file a second amended complaint.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Statement of Facts in Support of His Response to Defendant's Motion for Summary Judgment (Doc. # 52) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 41) is **GRANTED**.